# EXHIBIT D

## OWNER AGREEMENT

In consideration of, and as a condition to the granting by **PAPA JOHN'S INTERNATIONAL, INC.** ("we" or "us") of a Development Agreement dated *March 17*, 2014, and all Franchise Agreements executed pursuant to its terms (collectively the "Agreements"), providing certain rights relating to one or more Papa John's Restaurants (the "Restaurants") to **PRB I LLC** ("Franchisee"), each of the undersigned individuals ("you"), being a beneficial owner of an interest in the Franchisee, hereby covenants and agrees to be bound by the terms and restrictions of this Owner Agreement ("Owner Agreement"):

      **1.**     **Acknowledgements.** Each of you, jointly and severally, represents and warrants to us that:

      **(a)**     you are the owners of all equity, voting and other ownership interests in Franchisee and/or all options, warrants and rights to acquire an interest in Franchisee and that the address and telephone number set forth next to your name below are accurate and complete and you will immediately advise us of any change in the information and we may use or distribute the same as required by law, including in our Franchise Disclosure Document.

      **(b)**     Franchisee is duly organized and validly existing in good standing under the laws of the State of Delaware, is qualified to do business in all jurisdictions in which its business activities or the nature of properties owned by it requires such qualification, and has the authority to execute and deliver the Agreements and perform all of its obligations under the Agreements;

      **(c)**     you understand and acknowledge that it is a condition to the granting of the franchise to Franchisee that you enter into this Owner Agreement and we have entered into the Agreements in reliance upon your agreement to do so, and will continue to do so;

      **(d)**     all information submitted to us by you, including all applications, financial statements and other documents and information, is true and correct in all respects and does not omit any statement or item of material fact necessary to make the statements made therein not false or misleading; and

      **(e)**     as Franchisee's owners, you have received adequate consideration to support your execution of this Owner Agreement.

      **2.**     **Confidentiality and Non-Competition Agreements.**

      **(a)**     **In-Term Covenant Not-to-Compete.** Each of you covenants and agrees that during the period you own any equity, voting or other beneficial interest in Franchisee and Franchisee owns one or more Restaurants, or any beneficial interest therein, or holds any rights to develop one or more such Restaurants (including all renewal periods) you shall not engage in any of the following activities anywhere in the United States:

(i)      directly or indirectly enter into the employ of, render any service to or act in concert with any person, partnership, limited liability company, corporation or other entity that owns, operates, manages, franchises or licenses any business that (A) sells pizza or other non-pizza products (excluding soft drinks) that are the same as those sold by Papa John's restaurants on a delivery or carry-out basis, including, without limitation, business formats such as Domino's, Pizza Hut, Mr. Gatti's, Sbarro and Little Caesars, or (B) derives 20% or more of its gross revenues, at the retail level, from the sale of pre-cooked, ready-to-eat food products on a delivery basis (a "Competitive Business");

(ii)      directly or indirectly engage in any such Competitive Business on your own account;

(iii)      become interested in any such Competitive Business directly or indirectly as an individual, partner, member, shareholder, director, officer, principal, agent, employee, consultant or in any other relationship or capacity; provided, that the purchase of a publicly traded security of a corporation engaged in such business or service shall not in itself be deemed violative of this Owner Agreement so long as you do not own, directly or indirectly, more than 1% of the securities of such corporation; or

(iv)      divert or attempt to divert any business or any customers of the Papa John's chain to any Competitive Business.

(b)      **Post-Term Covenant Not-to-Compete.**  For a period of two years after the earlier of:  (i) the date Franchisee ceases to own any Restaurants, any beneficial interest therein or any rights to develop Restaurants, regardless of the reason that such ownership ceases or terminates; or (ii) the date we receive written notice and evidence from you or the Franchisee that you cease to own any equity, voting or other beneficial interest in Franchisee (the "Restricted Period"), you shall not, within a 10-mile radius of (A) the Location, or (B) any business location in which we or an Affiliate or another Papa John's franchisee then conducts a Papa John's business (collectively, the "Territories"), engage in any Competitive Business or any other activity described in subsections (i) through (iv) of Section 2.(a).

During any period in which any of the covenants in this Section 2 is being breached or violated, including any period in which any of the parties hereto seeks judicial or arbitral enforcement, interpretation or modification of any such covenant, and all appeals thereof, the Restricted Period shall toll and be suspended.

(c)      **Appropriation and Disclosure of Information.**  Except as permitted under the Agreements, you will not at any time use, copy or duplicate the System or any aspect thereof, or any of our trade secrets, recipes, methods of operation, processes, formulas, advertising, marketing, designs, plans, software, programs, know-how or other proprietary ideas or information, nor will you convey, divulge, make available or communicate such information to any third party or assist others in using, copying or duplicating any of the foregoing.

**(d)      Infringement; Validity of Marks and Copyrights; Registrations.** You will not at any time commit any act that would infringe upon or impair the value of the System or the Marks, nor will you engage in any business or market any product or service under a trade name, trademark, service mark, logo or design that is confusingly or deceptively similar to any of the Marks.  You agree that you will not, either during the Term or any time thereafter, directly or indirectly challenge or contest the validity of, or take any action to jeopardize our rights in or ownership of, any of the Marks or any registration of a Mark or any Copyrighted Work.  If you violate this provision, we will be entitled to all equitable, monetary, punitive and any other relief that may be available under applicable law, as well as the recovery of all costs, expenses and attorneys' fees incurred by us as  result of such violation.

**(e)      Solicitation of Employees.**  You agree that from and after the date hereof, you will not solicit, entice or induce, directly or indirectly, any of our employees or the employees of our Affiliates or franchisees to leave their employment to work with you, or any of you, or with any person or entity with whom you are or become affiliated.

**(f)      Trade Secrets and Confidential Information.**  You understand and agree that we have disclosed or may disclose to you certain confidential or proprietary information and trade secrets.  Except as necessary in connection with the operation of the Restaurants and as approved by us, you shall not at any time, directly or indirectly, use for your own benefit or communicate or divulge to, or use for the benefit of any other person or entity, any trade secrets, confidential information, knowledge or know-how concerning the recipes, food products, advertising, marketing, designs, plans, software, programs or methods of operation of the Restaurants or the System.  You will disclose to your employees only such confidential, proprietary or trade secret information as is necessary to operate your business under Papa John's franchises and then only while the franchise is in effect.  Any and all information, knowledge, or know-how, including, without limitation, drawings, materials, equipment, marketing, recipes, and other data, that we designate under the Agreements as secret or confidential shall be deemed secret and confidential for purposes of this Owner Agreement.

**(g)      Reasonableness of Scope and Duration.**  You agree that the covenants and agreements contained in this Section 2 are, taken as a whole, reasonable with respect to the activities covered and their geographic scope and duration, and no party shall raise any issue of the reasonableness of the areas, activities or duration of any such covenants in any proceeding to enforce any such covenants.  Each of you acknowledge and agree that you have other skills and resources and that the restrictions contained in this Section will not hinder your activities or ability to make a living either under the Agreements or in general.

**(h)      Enforceability.**   Each of you agree that we may not be adequately compensated by damages for a breach of any of the covenants and agreements contained herein, and that, in addition to all other remedies, we are entitled to injunctive relief and specific performance to remedy such breach. The covenants and agreements contained in this Section 2 shall be construed as separate covenants and agreements, and if any court or arbitrator shall finally determine that the restraints provided for in any such covenants and agreements are too broad as to the area, activity or time covered, said area, activity or time covered may be reduced to whatever extent the court or

-3-

arbitrator deems reasonable, and such covenants and agreements shall be enforced as to such reduced area, activity or time. To the extent required by applicable law, the duration or the geographic areas included within the foregoing covenants, or both, shall be deemed amended in accordance with this Section 2.(h).

3.     **Guaranty.**

(a)     **Guaranty.**

(i)     Each of you personally and unconditionally guaranty to us and to our Affiliates including, without limitation, PJ Food Service, Inc., as well as any of their successors or assigns (collectively referred to as "Our Group"), the punctual payment when due of all sums, indebtedness and liabilities of every kind and nature that Franchisee may now or in the future owe to any member of Our Group (including interest, and all attorneys' fees, costs and expenses incurred by any member of Our Group in collection); provided that as long as the Franchisee owns fewer than 15 Restaurants, the maximum aggregate liability under this guaranty shall not exceed the greater of: (A) $300,000, or (B) $50,000 times the number of Restaurants owned by the Franchisee. For purposes of this Guaranty, the number of Restaurants owned by the Franchisee shall be the greater of:  (1) the number of Restaurants owned by the Franchisee at the time of incurrence by the Franchisee of the most recent liability for which enforcement of the guaranty is sought; or (2) the number of Restaurants owned by Franchisee at the time we notify you (or any of you) of our intention to enforce the guaranty.

(ii)     Each of you hereby acknowledges and agrees that if, at any time, the Franchisee owns 15 or more Restaurants, we have the right to require additional guaranty or other assurance from you, by either:  (A) raising the maximum liability under the guaranty by an amount resulting from calculation in accordance with the mathematical formula set forth in Section 3.(a)(i); or (B) requiring the Franchisee or you to obtain an irrevocable, transferable and divisible letter of credit from a United States lending institution approved by us in an amount determined by us but not to exceed your maximum aggregate liability determined in accordance with the calculation in (A) above ("Letter of Credit") upon which we shall be entitled to draw in order to satisfy any obligation of the Franchisee to us or any member of our Group upon presentment by us to the lending institution of our (or our applicable Group member's) standard invoice or shipping and title documents.

(b)     **Covenants and Acknowledgements.** Each of you covenant and agree that: (1) liability under this guaranty is joint and several; (2) this is a guaranty of payment and not of collection and you shall render any payment required under the Agreements or this guaranty upon demand of the appropriate member of Our Group; (3) this guaranty extends to all amounts Franchisee may now or in the future owe to any member of Our Group, whether pursuant to the Agreements, another agreement with us or otherwise; (4) your liability under this guaranty is not contingent or conditioned upon pursuit by Our Group of any remedies against Franchisee or any of you; (5) your liability hereunder shall not be diminished, relieved, or otherwise affected by any extension of time, credit, or other indulgence or waiver that any member of Our Group may from time to time grant to Franchisee or to any of you, including, without limitation, the acceptance of

partial payment or performance, the compromise or release of any claims, the release of any other guarantor, or consent by Our Group to any transfer or assignment of the franchise or any interest therein and Our Group expressly reserves all rights that we may have against you.

**(c)     Term of Guaranty.**  This guaranty and your obligations under it shall continue in effect until the earlier to occur of: (i) twelve (12) months after you send us written notice and evidence that you have ceased to own any beneficial interest in the Franchisee and such transfer was in accord with all the terms of the Agreements; or (ii) 11 years from the date of this guaranty, provided, that if any of the Agreements or the Papa John's franchise is renewed, this guaranty shall be extended for a period equal to the renewal period plus 12 months.  The term of this guaranty shall also be extended during any period in which:  (A) any member of Our Group is involved in any judicial or administrative process with Franchisee or any of you (1) to collect any amounts owed it by the Franchisee or you, or (2) to enforce the terms of this guaranty; or (B) any bankruptcy or similar proceeding involving Franchisee or any of you.

Your obligations under this guaranty remain in full force and effect without regard to, and shall not be released, discharged or in any way modified or affected by, any circumstance or condition of Franchisee (whether or not you shall have any knowledge or notice thereof), including, without limitation, bankruptcy, insolvency, reorganization, composition, liquidation or similar proceeding or any action taken by any trustee or receiver or by any court in any such proceeding.

**(d)     Waivers.**  Each of you waives notice of demand, notice of protest, nonpayment or default, and all other notices to which Franchisee or you may be entitled, and all suretyship and guarantor's defenses generally and any and all other notices and legal or equitable defenses to which you may be entitled.  You waive all exemptions to which you may now or hereafter be entitled under the laws of this or any other state or of the United States.  You waive any right that you may have to require that an action be brought against Franchisee or any other person as a condition to your liability and further waive any right that you may have to payments and claims for reimbursement or subrogation that you may have against Franchisee arising as a result of your execution and performance of this guaranty.

**(e)     Assignment.**  This guaranty is personal to you and the obligations and duties imposed in it may not be delegated or assigned; provided, this guaranty shall be binding upon your successors, assigns, estates and personal representatives.  This guaranty shall inure to the benefit of Our Group, and the affiliates, successors and assigns of any of Our Group.

**(f)     Enforcement.**  If any one or more provisions in this guaranty is for any reason held invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this guaranty shall be construed to bind you to the maximum extent permitted by law that is subsumed within the terms of such provision as though it were separately articulated herein.

**4.     Covenant Not to Transfer Interests.**  Each of you agree that your interest in Franchisee is restricted in accordance with the terms of the Agreements and covenant that you will not at any time during which Franchisee is a Papa John's franchisee and/or developer, directly or

indirectly, voluntarily or involuntarily, make any "transfer" (as defined in the Agreements) of all or any portion of your interest in Franchisee, or any interest in the franchise, or offer or attempt or permit any of the same to be done, unless you first obtain our written approval in compliance with the same provisions applicable to a transfer by you as set forth in the Agreements. You shall cause all stock certificates (or other documents evidencing an ownership interest or right to acquire an ownership interest) issued by Franchisee to bear a legend indicating that such stock (or other document) is subject to the restrictions provided for in the applicable Agreement. Each of you shall give us not less than 45 days prior written notice of any intended or proposed transfer of your interest in Franchisee, and shall also cause Franchisee to give such notice as is required by the applicable Agreement.

5.   **Miscellaneous.**

(a)   **Definitions.**   Except as otherwise defined in this Owner Agreement, all capitalized terms shall have the same meaning given them in the Agreements.

(b)   **Interpretation and Enforcement.**   Each of you agree and acknowledge that the interpretation and enforcement of this Owner Agreement shall be governed by Sections 14 and 16 of the Development Agreement.

**IN WITNESS WHEREOF,** each of you have signed this Owner Agreement on the date set forth opposite your signature.

Signature: _____     DATE: ___3/12/19___
Name: Kenneth Antos
Address: _5148 Spanish Heights Dr._
_Las Vegas, NV 89148_

Telephone Number: _762.298-3792_

Signature: _____     DATE: ___3/12/14___
Name: Sheila Antos
Address: _5148 Spanish Hgts Dr._
_Las Vegas, NV 89148_

Telephone Number: _702-248-3792_

TO BE COMPLETED IF PRINCIPAL OPERATOR IS NOT AN OWNER.

I represent and acknowledge that I am the Principal Operator of one or more Restaurant(s) and that I agree to be bound by the provisions of Section 2 of this Owner Agreement and, at such time as I

-6-

become an Owner (as required by the Agreements) to be fully bound by this Owner Agreement without any need for further action or reexecution of this Owner Agreement.

PRINCIPAL OPERATOR


Signature: _____
Name: _____
Address: _____

_____
_____
Telephone Number: _____